**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. No. 26-cr-01851-SMD

ANGEL DE JESUS MORALES-AGUIRRE,

Defendant.

**ORDER GRANTING DEFENDANT'S SECOND MOTION TO SUPPRESS**

THIS MATTER is before the Court on Defendant's second motion to suppress. Doc. 64 ("Mot. to Dismiss"). Having considered the motion, the government's response (Doc. 75) ("Resp."), the reply (Doc. 92) ("Reply"), all tendered exhibits, June 24, 2026 suppression hearing testimony, and the relevant law, the Court **GRANTS** Defendant's motion to suppress.

**FACTUAL FINDINGS**

Defendant Angel De Jesus Morales-Aguirre has been indicted on three counts: transporting illegal aliens, conspiracy to transport illegal aliens, and aiding or assisting certain inadmissible aliens to enter the United States. *See* Docs. 19, 81. On January 13, 2026, at approximately 4:10 a.m., Border Patrol Agent Javier Murillo encountered Defendant and a juvenile on New Mexico Highway 9. Tr. 14:4. The red Mercedes-Benz previously occupied by Defendant and the juvenile was found stranded in the middle of the lane, running out of fuel. *Id.* 14:15–17; 15:2–5.

Agent Murillo inquired about their immigration status and verified Defendant's United States citizenship. *Id.* 16:14–16; 18:22. The juvenile claimed he was a non-citizen with valid status to remain in the country, though his status could not be verified at that time. *Id.* 19:8–9.

After obtaining Defendant's and the juvenile's consent to search the car, the agents spotted fresh dirt on the front and rear floorboards, found themselves unable to open the trunk, and within a short amount of time discovered three sets of footprints nearby. *Id.* 21:17–18. Consequently,

the agents suspected a third individual was involved. *Id.* 21:4–10. Agent Murillo then informed Defendant and the juvenile that they were temporarily detained. *Id.* 21:22–25. Subsequently, the juvenile was transported to the Santa Teresa Border Patrol station, while Defendant remained at the scene inside a Border Patrol vehicle. *Id.* 25: 1–16.

Defendant was initially released at approximately 7 a.m. after the agents made no significant progress tracking the third individual or verifying the juvenile's status. *Id.* 29:4–7. He was subsequently placed under arrest at approximately 7:45 a.m., after Border Patrol agents apprehended the third individual. *Id.* 32:5. This individual stated that he was previously being transported illegally in a red Mercedes-Benz. *Id.* 31:13–20. Defendant was then transported to the Santa Teresa Border Patrol Station, where Agent Erika Gonzalez and Agent Enrique Gutierrez interviewed him. *Id.* 8:24–25; 9:1. At approximately 10:50 a.m., after being read his *Miranda* rights in Spanish and signing the waiver forms, Defendant gave an incriminating statement. *Id.* 96:3.

Defendant signed a "United States Border Patrol Consent to Search Form for Telephones" at 10:55 a.m. *See* Doc. 75-1. The form contains the following statement in both English and Spanish:

> I, ___, DOB___, COB:___ hereby grant my consent to Agent(s) of the United States Border Patrol to search the mobile telephone(s) found on my person or in my vehicle including the address book, call history logs, photographs, videos, voice and text messages and other data contained in the telephone(s). To facilitate the search, I understand that the agents may digitally copy to and retain this data on a computer or other electronic device. I further give my consent for agents of the United States Border Patrol to answer the telephone if it rings and to respond to any incoming text messages or other electronic communications.
>
> I understand that I have the right to refuse the consent to the search described above and to refuse to sign this form. I further state that no promises, threats, force, physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search of the mobile telephone(s).

*Id.*

The "Official Use Only" section located at the bottom of the same consent-to-search form reads: "Cell Phone Model: Motorola," and "Color: Green." *See id.* A property tag number of "18931618" was also associated with the device. *See id.*

However, the government seized and searched a different phone: a blue iPhone 12 Pro Max (the "blue iPhone"). *See* Resp. at 1. Both the government's G166F report and the Custody Receipt for Seized Property and Evidence ("Custody Receipt") identify the blue iPhone as belonging to Defendant. *See* Docs. 75-2, 75-3.

Based on the record, the government never obtained a search warrant for the blue iPhone. A Border Patrol Memorandum of Investigation states that a search of Defendant's and the noncitizen's phones revealed a WhatsApp group conversation for a group named "9," together with associated contacts and photographs. *See* Mot. to Suppress at 2. The government initially represented that nothing was recovered from the blue iPhone, then disclosed that agents had in fact accessed it and recovered inculpatory evidence. *See id.*

The government seeks to introduce evidence discovered on the blue iPhone, arguing that the incorrect model identified on the consent-to-search form constitutes a mere "clerical error." Resp. at 3. The government also seeks to present Border Patrol agent Victor Garcia as an expert, anticipating his testimony will address "types of communications used by smugglers, phones, apps, maps, photos taken by smugglers (maps, addresses, screenshots of locations, etc.), contacts in smuggler's phones, and proof of life photographs or videos." Doc. 58 at 2.

**DISCUSSION**

The government does not dispute that Defendant has standing to challenge the search of his own phone. Both the G166F report and the Custody Receipt confirm that the blue iPhone

belongs to Defendant. *See* Docs. 75-2, 75-3. He therefore maintains a reasonable expectation of privacy in the device and its digital contents. *See Riley v. California*, 573 U.S. 373, 403 (2014).

With Defendant's standing established, the next threshold issue is whether a cellphone can be searched incident to a lawful arrest. Defendant argues, and the government does not dispute, that *Riley v. California* limits the warrantless search of a cellphone incident to an arrest or detention. Mot. to Suppress at 3. In *Riley*, the Supreme Court held that law enforcement officers generally cannot search a defendant's cellphone incident to an arrest without a warrant, reasoning that these searches severely invade privacy but do not serve to promote safety or preserve data. *Riley*, 573 U.S. at 403.

While a warrantless search is generally prohibited, voluntary consent is a longstanding exception to the general requirement that law enforcement officers must have a warrant to conduct the search. *United States v. Warwick*, 928 F.3d 939, 943 (10th Cir. 2019). The exception applies when the government proves (1) the officers received either express or implied consent and (2) that consent was freely and voluntarily given. *United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012). Whether officers obtained valid consent is a question of fact determined through the totality of the circumstances. *Id.* at 1318; *United States v. Guillen*, 995 F.3d 1095, 1103 (10th Cir. 2021).

Even when valid consent is obtained, the government's authority is not limitless; whether a search exceeds the scope and duration of consent "turns on what a reasonable person would have understood to be the scope and duration of his consent under the circumstances." *United States v. Gomez-Arzate*, 981 F.3d 832, 844 (10th Cir. 2020); *United States v. Rosborough*, 366 F.3d 1145, 1150 (10th Cir. 2004). The current record does not indicate that Defendant gave express or implied consent to search the blue iPhone. The consent-to-search form unequivocally lists a green

Motorola with a distinct property tag number. *See* Doc. 75-1. A reasonable person would not have understood a consent-to-search form permitting the search of a green Motorola cellphone to also authorize the search of a blue iPhone.

The government counters that the consent-to-search form grants explicit permission to search the phone found on Defendant's person. *See* Resp. at 4. Because it is undisputed that the blue iPhone was found on his person and belongs to him, the government further contends that the references to a green Motorola on the form constitute a mere innocuous clerical error. *See id.* To focus on such a technicality, the government argues, "overlooks the reality of the situation." *Id.*

While the consent-to-search form does start with "I . . . hereby grant my consent to Agent(s) of the United States Border Patrol to search the mobile telephone(s) found on my person or in my vehicle . . . ," the form proceeds to narrow that scope explicitly by identifying the specific device to be searched: a green Motorola with property tag "18931618." *See* Doc. 75-1. In determining the scope of a defendant's consent, courts ask what a reasonable person would have understood by the exchange between the defendant and the officer. *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999). The Court is not persuaded that a consent-to-search form expressly identifying the model, color, and property tag of a specific device can be interpreted to grant blanket authorization to search any additional phone found on a defendant's person, as well. Such a reading impermissibly stretches the scope of the consent, and is, in fact, the "position[] at odds with logic, common sense, and the law." Resp. at 3.

Ultimately, distinguishing between a "green Motorola" and a "blue iPhone" is not splitting hairs over a technicality. Permission to search one specific piece of property cannot be broadly inferred to apply to other property of the same kind without directly undermining the protections of the Fourth Amendment. Indeed, the requirement to specify the model, color, and property tag

of the phone would be pointless if the consent-to-search form is read so broadly that those specifications become superfluous. The government contends that "there were no less than five phones seized by Border Patrol in connection with this case and human error can be attributed to the mislabeling." Resp. at 4. Precisely because multiple phones were seized and multiple individuals were apprehended during this incident, it is even more critical for law enforcement to clarify ownership of the properties seized and obtain unequivocal consent to search or get a warrant.

The government cites two cases for the proposition that clerical errors do not necessarily invalidate a search. *See* Resp. at 2–3. The Court agrees that clerical errors do not always invalidate a search, but rejects that argument here. While the propositions are correct, none of the government's cited cases include facts that support the government's position in this case. In *United States v. Ventresca*, the Supreme Court considered whether a warrant, which is notably absent here, contained sufficient indicia of reliability for a recitation of multiple instances where the affiant and other investigators observed evidence that the subject premises, the identity and description of which were not at issue, was involved in criminal acts. 380 U.S. 102, 103–04 (1965).

Similarly unhelpful is the government's reliance on *United States v. Lora-Solano*, 330 F.3d 1288 (10th Cir. 2003), though that case is at least in the right zip code. *Lora-Solano* dealt with a situation, not uncommon, in which the house number of a particular residence is incorrectly listed in the warrant. In that case, an informant told investigators that the informant had agreed to deliver drugs to a house the informant visited previously. *Id*. at 1291. The informant initially gave the investigators a house number, 2021, that was not found when the investigators researched the residence. *Id*. The informant took the investigators to the specific residence where he had agreed

to make the delivery and they discovered the house number was 2051, instead of 2021 as the informant mistakenly remembered. However, though the warrant was not corrected before it was submitted for court authorization, the investigators had probable cause for the correct residence and specific information to identify that correct property. Indeed, with the warrant they searched the specific residence identified by the informant. As the court aptly observed, "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." *Id.* at 1293. There, the court endorsed the First Circuit's succinct description of the real purposes of the Fourth Amendment's particularity requirement: "The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *Id.* (citing *United States v. Pervaz*, 118 F.3d 1, 9 (1st Cir. 1997) (internal citations omitted). Both considerations are fatal to the government's argument here.

While this case involves consent rather than a warrant, the same Fourth Amendment protections ensured by sufficient particularity in a warrant are equally important in assessing the scope of consent. As the government points out, "no less than five phones" were seized from three different arrested people who had been traveling in one single vehicle. *See* Resp. at 4. Notably, nothing in the record identifies where or from whom the green Motorola phone was seized. Yet, that is the description of the property to be searched. Because the agents identified and searched a phone not attributed to Defendant in the consent-to-search form, the consent form does not merely create a "reasonable probability that another premise might be mistakenly searched;" that is precisely the result. *See Lora-Solano*, 330 F.3d at 1293.

Crucially, during the June 24, 2026 suppression hearing, defense counsel asked Agent Gonzalez on cross examination whether the consent-to-search form accurately reflected Defendant's consent regarding the "Motorola green phone" seized by agents. Agent Gonzalez answered that it did. Tr. 119:9–13.

Defense counsel further clarified by asking: "And that's the phone that you obtained consent to search, correct?" Agent Gonzalez answered: "Correct." *Id.* 119:14–16. During her testimony, Agent Gonzalez never mentioned that Defendant consented to a search for a different, blue iPhone. Nor did Agent Gonzalez ever claim that the consent-to-search form granted blanket permission to search all phones found on Defendant's person, despite the government's argument to the contrary. Instead, she stated unequivocally that the Border Patrol agents only had consent to search the green Motorola. *See id.* As such, the available facts fail to demonstrate that Defendant ever consented to a search of the blue iPhone.

Alternatively, the government asserts that "both the Border Patrol and Defendant knew" consent was actually given to search the blue iPhone, despite the form identifying a green Motorola. *Id.* This assertion of mutual knowledge, however, lacks any evidentiary support. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). "The scope of a search is generally defined by its expressed object." *Id.* In this case, Defendant signed a form consenting to a search of a green Motorola. Because the green Motorola is the only item listed on that form, the scope of consent does not extend to anything else. Fourth Amendment inquiries cannot be resolved by an unproven, contested, subjective "meeting of the minds."

Finally, the government argues that by extending the consent to cover the blue iPhone, "[t]he spirit of the consent was honored." *Id.* This argument fails as a matter of law. "[V]alid

consent must be unequivocal and specific, and freely and intelligently given." *United States v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993). The government bears the burden of proving such consent. *United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996). Consent cannot be interpreted broadly, vaguely, or merely "in spirit." To do so would contradict the plain language of the Fourth Amendment and render its protections futile.

In *Riley*, the Supreme Court recognizes that restrictions on warrantless cellphone searches "will have an impact on the ability of law enforcement to combat crime." *Riley*, 573 U.S. at 401. "Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals." *Id.* But as the Court noted, "[p]rivacy comes at a cost," and so do Fourth Amendment protections generally. *Id.*

The Court declines to hold an evidentiary hearing on this motion. An evidentiary hearing is only required when the motion to suppress "raise[s] factual allegations that are 'sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue.'" *United States v. Glass*, 128 F.3d 1398, 1408–09 (10th Cir. 1997); *see also United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024), *cert. denied*, 2024 ("In other words, a hearing is required when the motion asserts facts that (1) are disputed and unresolvable on the record and (2) will affect the resolution of the constitutional claim."). Here, there are no contested issues of fact. The parties do not dispute that there is only a single consent-to-search form for cellphones, which lists a green Motorola phone and makes no mention of a blue iPhone. Agent Gonzalez confirmed this point during her testimony at the June 24, 2026 suppression hearing. The parties had a full opportunity to conduct direct and cross-

examinations on this issue. A second evidentiary hearing would be redundant, as it will not further develop the factual record or change the outcome of this motion.

## CONCLUSION

For the reasons stated above, the Court **FINDS** that there was no valid consent to search Defendant's blue iPhone. The Court **FURTHER FINDS** no valid search warrant authorized the search of Defendant's blue iPhone. **WHEREFORE**, Defendant's motion to suppress all evidence obtained from the search of the blue iPhone, including, but not limited to, the WhatsApp group conversations, contacts, screenshots, and photographs, is **GRANTED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**